UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:23-cr-05144-DGE-1 |
| Plaintiff, | ORDER DENYING MOTION TO |
| v. | SUPPRESS (DKT. NO. 57) |
| BRYANT KEITH MCCULLOUGH, | |
| Defendant. | |

Defendant Bryant McCullough is indicted on one count of Production of Child Pornography, 18 U.S.C § 2251(a), (e)(1).  (Dkt. No. 14.)  This matter is before the Court on McCullough's motion to suppress.  (Dkt. No. 57.)  In a prior order, the Court granted McCullough's request for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) (Dkt. No. 81), and the Court held the hearing on November 14, 2025 (Dkt. No. 88).  As further explained below, the Court concludes that Detective Jimmy Welsh made reckless omissions in his application for a search warrant, but even so, the warrant still would have been

ORDER DENYING MOTION TO SUPPRESS (DKT. NO. 57) - 1

issued if the omissions were added back in.  Thus, the Court DENIES Mccullough's motion to suppress.

# I    BACKGROUND

The Court makes the following findings of fact based on the documentary record as well as testimony elicited at the evidentiary hearing.

The warrant at issue was authorized on March 10, 2023.  (Dkt. No. 57 at 34.)  It authorized law enforcement to seize and search McCullough's digital devices for evidence of "RCW 9.68A.050 Dealing in Depictions of Minor Engaged in Sexually Explicit Conduct in the First Degree; RCW 9.684.070 Possession of Depictions of Minor Engaged in Sexually Explicit Conduct in the First Degree; RCW 9A.44.086 Child Molestation in the Second Degree; RCW 9.68A.040 Sexual Exploitation of a Minor and RCW 69.50.406 Distribution to persons under the age eighteen[.]"  (*Id*. at 32.)

Detective Welsh has been employed at the City of Tacoma Police Department for the past 15 years.  (Dkt. No. 96 at 5.)  In 2018, Detective Welsh was promoted to detective and assigned to the Internet Crimes Against Children ("ICAC") unit.  (*Id.* at 6.)  In his six years conducting ICAC investigations, Detective Welsh led over 100 investigations and applied for and executed several hundred state search warrants to aid in his investigation.  (*Id.* at 8–9.)

On February 16, 2023, Detective Welsh began investigating McCullough after a woman, Chelsea Wilson, became aware of sexualized conversations occurring between McCullough and minors in the motocross community.  (*Id.* at 12–13.)  Wilson stated she had received a Snapchat picture from a parent group chat that raised "immense concern."  (Dkt. No. 74 at 63.)  Wilson stated the photograph, which she believed was sent to an unknown minor in the community approximately a year prior, was of McCullough, with "sexually explicit language affixed to the

picture." (*Id.* at 63–64.)  The photograph showed McCullough's face and included the following text: "I'm gonna suck your giant dick and then when you're the most hard I'm going to finish you off inside me. Then I'm gonna bend you over and finger your butt until your nice and loose and then I'm gonna stick my big dick inside of you until you can't take it anymo." (*Id.* at 64.) Detective Welsh identified MV1 was the original recipient of the Snapchat photo and confirmed that MV1 received the message from McCullough.  (Dkt. No. 96 at 14.)

On March 8, 2023, Detective Welsh received a call from the mother of MV2 and MV4, two minors who McCullough sponsored in motocross events.  (Dkt. No. 74 at 66.)  She reported that MV2 had disclosed that McCullough had touched his penis while he slept at McCullough's apartment.  (*Id.* at 67.)  At the time of the incident, McCullough and MV2 were sharing a bed and were the only ones in the apartment.  (*Id.*)

Detective Welsh later reviewed McCullough's background and "came across a report listing his name where he was reported as the recipient of a video of two minors having sex." (Dkt. No. 96 at 19.)  The report stated that on November 29, 2021, the mother of a 17-year-old girl reported that MV3 had recorded a sexual encounter with her daughter without her daughter's knowledge or consent ("the Video"), and "shared the video with his Moto-cross coach [McCullough], who is an adult.  [McCullough] then shared the video through a group Snapchat to several people." (Dkt. No. 74 at 68.)

On March 9, 2023, Detective Welsh interviewed MV3 regarding the Video.  (Dkt. No. 96 at 18.)  Detective Welsh advised MV3 of his constitutional rights before the interview because of the illegal nature in creating the Video.  (*Id.* at 20.)  Detective Welsh acknowledged that there were some matters during the interview that MV3 was "very confident" about, such as: (1) the Video was of MV3 having sex with another minor, (2) MV3 was 15 years old and the girl was 17

ORDER DENYING MOTION TO SUPPRESS (DKT. NO. 57) - 3

years old at the time of the Video, (3) the incident took place at an elementary school in the parking lot inside the victim's vehicle, and (4) MV3 filmed the video by holding the phone at chest-height looking down. (*Id.* at 20–22.) From MV3's description of the video, Detective Welsh understood that MV3 and the girl were in the backseat of the vehicle, and MV3 was behind her while performing sexual intercourse. (*Id.* at 22.)

MV3 stated he sent McCullough the Video on Snapchat because he "probably thought it was cool. And then, um, after that, [McCullough] sent it to another one of [MV3's] friends." (Dkt. No. 65, Exh. 3A at 10–11.) MV3's friend subsequently sent MV3 the Video and said he received it from McCullough. (*Id.* at 12–13.) When asked how McCullough responded when he was sent the Video, MV3 stated "I think he just saved it." (*Id.* at 14.) MV3 confirmed he knew McCullough saved the Video to his camera roll because a function on Snapchat informed him of that. (*Id.* at 14–15.) MV3 stated McCullough did not say MV3 should not be sending the Video to him, and stated, "I'm pretty sure he just responded something like, as a joke. Like he thought it was funny, but I don't remember the chats." (*Id.* at 15.)

Detective Welsh described other topics that MV3 was "equivocal" about, such as precisely what was in the Video. (Dkt. No. 96 at 24.) For example, MV3 described the Video as not "that long of a video." (Dkt. No. 65, Exh. 3A at 15.) MV3 further stated, "It was just this—like a few seconds and it was pitch black. You couldn't even see anything. So I—I just sent it to [McCullough] and that's how people knew it was me. 'Cause uh [MV3's friend] said—told people it was me, but all you could see is maybe the back of a sweatshirt." (*Id.* at 15–16.) Detective Welsh stated that other people had seen the Video and were able to tell who was in it, to which MV3 responded, "[I]f you maybe turned up the brightness all the way." (*Id.* at 16.) MV3 confirmed "you can't see me or anything in the video. You can see the back of my

sweatshirt, maybe. . . [b]ecause she was—she was wearing my sweatshirt." (*Id.*)  MV3 denied being able to see any part of their genitalia in the Video but stated the girl's butt was visible.  (*Id.* at 16–17.)  MV3 continued, "If you maybe turned up like—if you edited the—like, the video and turned up all the stuff, but I couldn't see anything, looking at it myself."  (*Id.* at 17.)  MV3 stated the Video was of him "having sex," "you just couldn't really see anything," and you could hear the girl's voice and moans within the three second video.  (*Id.* at 18, 42.)  MV3 agreed that someone "can obviously tell sex is taking place." (Id. at 34.)  MV3 further stated, "[Y]ou can— like, it was my sweatshirt that I always wore.  So, and you could like—you can obviously tell by like this audio that was her, and that it was sexual acts happening.  But I—I just don't remember if I told [McCullough] that it was me having sex with her, or if I just send it."  (*Id.* at 52.)

Detective Welsh explained that MV3 did not offer "any consistent description of what was or was not visible in that video[,]" and "[e]very time he provided a description, he would say you couldn't see anything, and he would follow it up with something you could see."  (Dkt. No. 96 at 25.)  From his experience, Detective Welsh believed that if one could see something in the Video, i.e. a sweatshirt, there were possibly other things visible as well, such as one of the minor's genitalia based on the orientation of the Video.  (*Id.* at 32–33.)  Detective Welsh further believed there was inconsistency between how MV3 described the Video and how people reacted to the Video: "Going from the perspective we couldn't see anything in the video, I had a hard time understanding why the video would then be sent, why other people would be able to identify people in the video, why [MV3] would be upset about it, why the victim would have been upset about it."  (*Id.* at 26–27.)  Finally, Detective Welsh was concerned MV3 was minimizing.  (*Id.* at 38.)

ORDER DENYING MOTION TO SUPPRESS (DKT. NO. 57) - 5

On March 10, 2023, Detective Welsh interviewed MV5 and MV6. (Dkt. No. 74 at 71.) MV5 stated McCullough had previously asked him for "pictures of him wearing the 'tighty-whities' [McCullough had gifted him]." (*Id.*) MV6 stated McCullough had asked him for a picture of his penis in exchange for a "care package" which MV6 took to mean Ethika underwear. (*Id.* at 71–72.)

Later, Detective Welsh submitted an affidavit in support of a search warrant for McCullough's residence and person describing the forementioned facts. (Dkt. No. 74 at 36–76.) However, because Detective Welsh was unable to get a definitive understanding of what was or was not visible in the Video, Detective Welsh wrote in his affidavit simply that MV3 was "not confident about the quality of the video." (Dkt. Nos. 96 at 29; 57 at 69.) Detective Welsh further stated MV3 sent McCullough an "obscene and illegal media file," and McCullough saved the Video to his phone, "archiving the child exploitative media file to his device." (Dkt. No. 57 at 69.)

## II    DISCUSSION

A hearing pursuant to *Franks v. Delaware* allows a defendant to challenge the sufficiency of an affidavit supporting a search warrant if they make a "substantial preliminary showing" both that law enforcement officers made a false statement or omission "knowingly and intentionally, or with reckless disregard for the truth," and that the statement or omission was "necessary to the finding of probable cause." 438 U.S. at 155–156. McCullough contends that Detective Welsh knowingly or reckless omitted the following information, that, if included in the warrant affidavit, would have negated probable cause: (1) MV3 states numerous times the Video was pitch black and one could not see anything, (2) MV3 denied that either person's genitals were visible, and (3) MV3 stated the Video showed the girl's butt and the back of her sweatshirt only.

ORDER DENYING MOTION TO SUPPRESS (DKT. NO. 57) - 6

Here, as noted, the Court determined McCullough had made "the requisite showing that the affidavit contained reckless omissions surrounding the content of the Video which may have affected the probable cause determination[,]" and ordered a *Franks* hearing.  (Dkt. No. 81 at 12.) That brings the Court to the merits of McCullough's *Franks* challenge.

**A.  Detective Welsh Recklessly Omitted Information from His Affidavit.**

To prevail on a *Franks* challenge, the defendant must establish two things by a preponderance of the evidence:" (1) "that the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant," and (2) "that the false or misleading statement or omission was material, *i.e.*, necessary to finding probable cause." *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (internal quotation marks, punctuation, and citation omitted).  "If both requirements are met, the search warrant must be voided and the fruits of the search excluded[.]"  *Id.* (internal quotation marks and citation omitted).  Under the first *Franks* step, a "negligent or innocent mistake does not warrant suppression."  *Id.*  Under the second step of *Franks*, the "key inquiry is 'whether probable cause remains once the evidence presented to the magistrate judge is supplemented with the challenged omissions.'"  *Id.* at 1119 (citation omitted).  "Probable cause to search a location exists if, based on the totality of the circumstances, there is a 'fair probability' that evidence of a crime may be found there."  *Id.*

The Court begins with *Franks* step one.  This is not a close call.  Detective Welsh testified that he intentionally did not include MV3's statements about the video being too dark or there not being anything visible, nor did he include information MV3 gave about what *was* visible.  (Dkt. No. 96 at 39–40.)  Instead, Detective Welsh described MV3 as "not confident on the quality of the video."  (Dkt. No. 57 at 69.)  Detective Welsh used "quality" in the affidavit to

ORDER DENYING MOTION TO SUPPRESS (DKT. NO. 57) - 7

describe "[t]he quality specific to me and what I do with Internet Crimes Against Children, reviewing child exploitative material speaks to numerous factors when we qualify a media image or media file." (Dkt. No. 96 at 40.)  Those factors include being able to understand the age of the people involved, what is taking place in a media file, and "other factors like that to be able to qualify that [media file] as a child exploitative media file." (*Id.* at 40–41.)  For example, a "high" quality video, or child sexual abuse material could include two children with their genitalia completely visible, the ability to age them biologically, and if there was a sex act taking place or the genitalia clearly on display. (*Id.* at 41.)  Detective Welsh testified that "quality" could also encompass what one could see on the video itself, such as low lighting or grainy footage. (*Id.*)  Detective Welsh further testified that a synonym for "not confident" as he used it would be "inconsistent." (*Id.* at 43.)

However, Detective Welsh did not provide his definition of "quality" or "not confident" to the reviewing judge.  Though Detective Welsh may have intended to portray to the reviewing judge MV3's inconsistent statements and Detective Welsh's uncertainty of what the Video truly showed, the resulting affidavit leaves one with a staggeringly different impression: that although MV3 was "not confident on the quality of the video[,]" the Video could still be described as "an obscene and illegal media file" or "child exploitative media file." (Dkt. No. 57 at 69.)  Thus, the Court concludes McCullough has established by a preponderance of the evidence that Detective Welsh recklessly omitted information about the content of the Video.

**B.  Once Supplemented, the Affidavit Establishes Probable Cause**

The Court now turns to step two: "whether the affidavit, once corrected and supplemented, establishes probable cause." *Perkins*, 850 F.3d at 1119 (citation and internal quotation marks omitted).

A warrant is supported by probable cause if, based on the totality of the circumstances, the application establishes "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also United States v. Gourde*, 440 F.3d 1065, 1069–74 (9th Cir. 2006) (en banc) (stressing the application of the "fair probability" standard in child pornography cases). Whether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a "commonsense, practical question." *Gourde*, 440 F.3d at 1069. Neither "certainty nor a preponderance of the evidence is required." *United States v. Kelley*, 482 F.3d 1047, 1050, 1055 (9th Cir. 2007) (defendant's computer could be searched for evidence of a crime "even if there is no probable cause for arrest, or a prima facie showing of criminal activity, let alone proof sufficient to prosecute a criminal case beyond a reasonable doubt, or even to prevail under the civil burden that it is more likely true than not that he knowingly received or possessed child pornography.") The issuing judge is "entitled to rely on the training and experience of police officers" when evaluating whether a warrant affidavit establishes probable cause. *United States v. Parks*, 285 F.3d 1133, 1142 (9th Cir. 2002) (quoting *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995)). The issuing judge's determination of probable cause "should be paid great deference." *Kelley*, 482 F.3d at 1050 (internal citation and quotation marks omitted). "'Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, resolution of doubtful or marginal cases in this area should largely be determined by the preference to be accorded to warrants.'" *Id.* at 1050–51 (quoting *Gates*, 462 U.S. at 237 n. 10) (alteration omitted).

In *Gourde*, a warrant was issued specifically for the purpose of searching a suspect's home for evidence of child pornography. 440 F.3d at 1067. The supporting affidavit outlined

ORDER DENYING MOTION TO SUPPRESS (DKT. NO. 57) - 9

the arrest of a nonparty owner of a pornography website, the owner's admission that the website contained images of child pornography, information from a credit-card processor suggesting that the defendant subscribed to the website, and investigators' opinions about how collectors and distributors of child pornography operate and about how long computer files remain on a computer even after they are deleted. *Id.* at 1067–1068. The Ninth Circuit held that these facts established sufficient indicia of probable cause. *Id.* at 1069. The Ninth Circuit emphasized that "the only inference the magistrate judge needed to make to find probable cause was that there was a 'fair probability' [the defendant] had, in fact, received or downloaded images." *Id.* at 1071. And the Ninth Circuit held that such inference "neither strains logic nor defies common sense . . . based on the totality of these circumstances." *Id.*

Including in the affidavit Detective Welsh's omissions about the uncertainty as to what is shown in the Video would have led a judicial officer to conclude that the Video's contents were unclear and that it may or may not have contained depictions of minors engaged in sexually explicit conduct. But even knowing the Video may or may not have contained depictions of minors engaged in sexually explicit conduct, the totality of the circumstances described in the affidavit support the conclusion that there was "a fair probability that contraband or evidence of a crime" would be found in McCullough's digital device(s). Recall, the crimes being investigated included not only possession of depictions of minors engaged in sexually explicit conduct, but also child molestation and sexual exploitation of a minor.

The affidavit here describes (1) the explicit Snapchat message McCullough sent to MV1, (2) McCullough's sexual molestation of MV2, (3) McCullough requesting a photo from MV5 of the minor in his underwear, (4) McCullough asking MV6 for a picture of his penis in exchange for a "care package", and (5) McCullough saving a video MV3 sent him that potentially depicted

ORDER DENYING MOTION TO SUPPRESS (DKT. NO. 57) - 10

two minors having sex.  In other words, McCullough had sexual contact with at least one minor and had been engaging in sexualized communications with other minors, including soliciting inappropriate photos from different minors.  And a reviewing judge could have concluded the Video depicted minors engaged in sexually explicit conduct based on the totality of the circumstances, including the victim's mother's statements, MV3's reaction to the distribution of the Video, his description of the Video to some extent, his frustration with McCullough after sharing the video, and the fact that McCullough downloaded the Video after receiving it.

Thus, reasonable inferences support the conclusion there was a fair probability that McCullough's phone and other digital devices stored these inappropriate communications and any media, including the Video, that may have been exchanged between McCullough and the minors.  This conclusion neither strains logic nor defies common sense.  Such communications and media would be evidence of the crimes that were being investigated even if they may not have established probable cause to arrest McCullough at that time.  *See Kelley*, 482 F.3d at 1050, 1055.

The Court, therefore, finds the warrant was properly issued even considering Detective Welsh's omissions as to the description of the Video.

### III    CONCLUSION

Accordingly, McCullough's motion to suppress (Dkt. No. 57) is DENIED.

Dated this 9th day of February, 2026.

David G. Estudillo
United States District Judge

ORDER DENYING MOTION TO SUPPRESS (DKT. NO. 57) - 11