UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>BRYANT KEITH MCCULLOUGH,<br>Defendant. | CASE NO. 3:23-cr-05144-DGE-1<br><br>ORDER DENYING MOTION FOR RECONSIDERATION (DKT. NO. 107) |

Six months after the Court denied Defendant Bryant McCullough's motion to suppress certain evidence, McCullough has filed a motion for reconsideration of that order.[1] He argues there is a manifest error in the Court's previous order, and there is "new information" available for the Court's review. (Dkt. No. 108 at 4.) However, this information—a recorded interview of certain minor victims—was presented to the Court in September 2025. Because McCullough has

[1] McCullough also requests the following relief: order to reopen the pretrial motions deadline; suppression of evidence obtained from electronic devices; dismissal of the charges; set another hearing pursuant to *Franks v. Delaware*; and continue the trial date. (Dkt. No. 107.)

not presented any new information or evidence, and further fails to show a manifest error in the Court's previous ruling, the Court DENIES the motion.

## I BACKGROUND

The Court incorporates the background facts in Dkt. No. 81 and the findings of fact identified in Dkt. No. 100 for the sake of judicial efficiency.

On August 26, 2025, McCullough filed a motion to suppress the evidence collected from his digital devices, arguing the investigating detective's affidavit supporting the warrant to search his electronic devices contained material omissions and misrepresentations that negated its showing of probable cause. (Dkt. No. 74.) McCullough identified numerous alleged omissions or false statements in his motion to suppress, including an argument that Detective Welsh misrepresented certain information obtained in an interview with MV5 and MV6. (Dkt. No. 75 at 22–23.) The Government provided a copy of the transcript and video recording of the MV5/MV6 interview for the Court's review. (*See* Dkt. Nos. 65, 66.) Following briefing and oral argument, the Court granted McCullough's request for an evidentiary hearing as to whether the affidavit contained reckless omissions surrounding the content of a video taken by MV3. (Dkt. No. 81.) Relevant here, the Court concluded that McCullough had not established a basis for a *Franks* hearing as to Detective Welsh's recitation of the MV5/MV6 interview. (*See id.* at 8.) The Court further stated, "Once the *Franks* hearing is conducted and the Court makes formal findings, the Parties will have one last opportunity to argue whether any omitted evidence the Court finds should have been included in the affidavit, *together with the remaining information in the affidavit*, is sufficient to establish probable cause for issuance of the search warrant." (Dkt. No. 81 at 12) (emphasis added).

On November 14, 2025, the Court held an evidentiary hearing, after which it granted additional briefing on the motion to suppress. (*See* Dkt. No. 88.) The Parties each filed a post-hearing brief. (Dkt. Nos. 90, 98.) On February 9, 2026, the Court denied McCullough's motion to suppress. (Dkt. No. 100.) Though the Court found that Detective Welsh had recklessly omitted certain information, the Court concluded that the warrant was properly issued even considering Detective Welsh's omissions. (*Id.* at 8, 11.)

On July 27, 2026, McCullough filed a motion to reconsider the Court's February 9 Order. (Dkt. No. 107.) The Court ordered the Government to respond (Dkt. No. 111), and the Government filed its response on August 12, 2026 (Dkt. No. 123).

## II LEGAL STANDARD

"No precise 'rule' governs the district court's inherent power to grant or deny a motion to reconsider a prior ruling in a criminal proceeding." *United States v. Lopez-Cruz*, 730 F.3d 803, 811 (9th Cir. 2013). Instead, courts look to the Federal Rules of Civil Procedure for guidance. *See United States v. Martin*, 226 F.3d 1042, 1047 n.7 (9th Cir. 2000) ("[P]ost-judgment motions for reconsideration may be filed in criminal cases," citing *United States v. Clark*, 984 F.2d 31, 33 (2nd Cir. 1993) (noting that courts have treated motions for reconsideration in criminal cases as the equivalent of a Rule 59(e) or 60(b) motion)).

A Rule 59(e) motion for reconsideration should not be granted "absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,* 571 F.3d 873, 880 (9th Cir. 2009) (quoting *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)). Under Rule 60(b), a court may relieve a party from a final judgment, order, or proceeding only in the following circumstances:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time; (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied; or (6) any other reason justifying relief from the judgment. *Stewart v. Dupnik*, 243 F.3d 549, 549 (9th Cir. 2000). "A motion seeking such relief is addressed to the sound discretion of the district court." *United States v. Krug*, Case No. CR 09-cv-01148-MMM, 2012 WL 12973474, at *2 (C.D. Cal. Oct. 24, 2012).

In this district, motions for reconsideration are "disfavored," and the court "will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." CrR 12(b)(13)(A).

## III DISCUSSION

### A. McCullough Has Not Presented New Evidence or Information

McCullough argues that the Court's February 9 Order resulted in a manifest error, in part because of new evidence received in a Freedom of Information Act request, and in part because the Court did not give McCullough "proper latitude to litigate the specific solicitation allegations upon which the Court found probable cause." (Dkt. No. 108 at 4, 9.) According to McCullough, the Court improperly constricted the scope of his argument at the *Franks* hearing to that of MV3 and the specific statements Detective Welsh made regarding a video. (*Id.* at 8.) However, McCullough raised numerous issues regarding Detective Welsh's affidavit in his original motion to suppress, including alleged issues within the MV5/MV6 interview. (*See generally* Dkt. Nos. 74, 75.) The Court conducted a complete analysis of McCullough's arguments and determined

that *only* the MV3 video raised sufficient questions to necessitate a *Franks* hearing.[2] At the end of the *Franks* hearing, the Court stated, "I am going to give you an opportunity, now that we have heard the evidence, [to] give me every final last argument." (Dkt. No. 96 at 120.) Thus, any argument that McCullough was limited to arguing only about MV3 and the video in relation to the motion to suppress is not supported by the record.

The Government argues that McCullough has not identified new facts related to the MV5/MV6 interview or demonstrated due diligence in bringing these allegedly new facts to the Court's attention. (Dkt. No. 123 at 6.) A motion to reconsider is not a vehicle for parties to make new arguments and present new evidence that could have been included in their original briefs. Thus, "[a] [motion for reconsideration] may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enterprises v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted); *see also Carroll v. Nakatani,* 342 F.3d 934, 945 (9th Cir. 2003) (citation omitted) ("A [motion to reconsider] may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation."); *Zimmerman v. City of Oakland,* 255 F.3d 734, 740 (9th Cir. 2001) (citations omitted) ("A district court does not abuse its discretion when it disregards legal arguments made for the first time on a motion to amend [judgment] . . . , and a party that fails to introduce facts in a motion or opposition cannot introduce them later in a motion to amend by claiming that they constitute 'newly discovered evidence' unless they were previously unavailable.") McCullough has failed to explain how the evidence and arguments

[2] McCullough further argues that "there are *limits* on the number of characters in pleadings, which force the parties to subjectively limit arguments to comport with the rules." (Dkt. No. 108 at 7–8.) What McCullough fails to mention is that *every* brief filed in support of or related to his motion to suppress was overlength. (*See* Dkt. Nos. 72, 74, 75, 76, 94, 108.)

submitted in his motion for reconsideration were not reasonably available earlier in the litigation. In fact, none of the evidence submitted by McCullough arose recently, as the recording of the MV5/MV6 interview was presented to McCullough in June 2025, and the transcript of the interview was provided in September 2025. (Dkt. No. 123 at 7.)

The Court agrees with the Government that McCullough has failed to identify a proper basis for reconsideration, and that it could deny McCullough's motion on that basis alone. Nonetheless, the Court considers the merits of McCullough's motion below.

**B. Even Considering the Merits, McCullough's Motion Fails**

McCullough asks the Court to reconsider its prior order denying suppression because he argues Detective Welsh made numerous material omissions and false statements in his affidavit regarding his recitation of the MV5/MV6 interview. While the Court finds McCullough's memorandum convoluted and difficult to follow, the Court attempts to address each in turn.

1. <u>"AM expressly stated he did not go to dinner with McCullough"</u>

McCullough argues that MV5 "expressly stated he did not go to dinner with McCullough." (Dkt. No. 108 at 12.) However, there appears to be a clerical error in the transcript McCullough cites to; although the transcript quotes MV5 as stated "I didn't go to the dinner," viewing the video recording of the interview shows that it was actually MV6 who said this. (*Compare* Dkt. No. 65, Exhibit 4 at 12:04-12:05, 26:00–26:04 *with* Dkt. No. 65, Exhibit 4A at 17, 35.) Instead, MV5 told Detective Welsh that he "went to dinner with like five other guys that were on the team," where McCullough "gave [him] a Christmas bag," which had "a pair of Ethikas and then [Hanes] tidy whities in it." (Dkt. No. 65, Exh. 4A at 19.) MV5 stated McCullough asked him "to send [McCullough] a picture of [MV5] in them." (*Id*. at 20.)

McCullough further argues that there is further proof that MV5 never went to dinner with McCullough because he explicitly states that "I've never seen [McCullough] outside of the track." (Dkt. No. 108) (quoting Dkt. No. 65, Exh. 4A at 35.) But again, there appears to be a transcript error as the video indicates MV6 made this statement, not MV5. (*See* Dkt. No. 65, Exhibit 4 at 26:00.) Moreover, MV5 did state he had dinner with McCullough and received a bag from him containing underwear. (*Id*. at 13:10.) The Court concludes there was no misrepresentation here.

2. "No inappropriate images were ever sent or received by MV5, MV6, or McCullough"

McCullough argues that Detective Welsh omitted from his affidavit that "no inappropriate images were ever sent or received by" MV5, MV6, or McCullough. (Dkt. No. 108.) McCullough references a portion of the transcript, where when asked "did he [McCullough] ever send you any photos?" MV5 responded "No, he didn't send me anything like that." (Dkt. No. 65, Exh. 4A at 20.) However, McCullough takes MV5's response out of context. The full conversation reads:

> DETECTIVE WELSH: Okay. And what – tell me how that conversation progressed after that.
>
> [MV5]: Uh, he asked me to send him a picture of me in them. He said -- he asked me if I'd worn them. And I said, "No, not yet". And he said, "Make sure you send me a picture when you do wear them".
>
> DETECTIVE WELSH: Okay. Did -- did the conversation continue after that?
>
> [MV5]: No.
>
> DETECTIVE WELSH: Is that because you blocked him, did you stop talking to him?
>
> [MV5]: I just kind of stopped talking to him.
>
> DETECTIVE WELSH: Okay. Did you -- did he ever send you any photos?

> [MV5]: No, he didn't send me anything *like that*.

(*Id.*) (emphasis added.)

McCullough attempts to discount MV5's mother's statement that "McCullough would send [MV5] a lot of pictures, including pictures of McCullough sitting on the toilet using the bathroom. [MV5] explained in these photos you could see McCullough's pants down around his ankles with him seated on a toilet." (Dkt. No. 57 at 71.) That MV5 stated he did not receive photos of McCullough in his underwear does not make it "clear that [MV5's mother] did not provide the statement," as McCullough argues. (Dkt. No. 108 at 15.)

McCullough also points out that both MV5 and MV6 answered "No" when asked whether either of them "receive[d] any type of sexualized images of [McCullough] . . . or any other type of pornography?" (Dkt. No. 65, Exh. 4A at 34.) Again, MV5 states he did not receive sexualized or pornographic images from McCullough, which is arguably different than receiving a photo of McCullough siting on the toilet.

3. <u>"Detective Welsh falsely portrayed the conversation between McCullough and MV6 as private"</u>

McCullough argues that MV6 gave three "versions" of his interactions with McCullough, the third of which was omitted from the affidavit because it "undercuts the validity of [MV6's] first two statements." (Dkt. No. 108 at 17.) The "third version" is as follows:

> DETECTIVE WELSH: Okay. And [McCullough] asked you pretty blunt like, hey, send me a dick pic. I'll send you some good stuff?
>
> [MV6]: Yeah.
>
> DETECTIVE WELSH: Okay.
>
> [MV6]: But it looks like he like group snaps, because like he doesn't -- like so you respond like no.
>
> DETECTIVE WELSH: Um hum.

[MV6]: And will be like, "I'm joking," with like a laughing emoji.

DETECTIVE WELSH: Um hum.

[MV6]: So I think he's like group snapping kids, not snapping one-on-one.

DETECTIVE WELSH: Okay.

[MV6]: So like many kids got the same exact snap I got.

DETECTIVE WELSH: Gotcha. Okay.

(Dkt. No. 65, Exh. 4A at 6.)

According to McCullough, these statements "directly contradict the sworn statements of Detective Welsh." (Dkt. No. 108 at 17.) However, the affidavit states, "[MV6] confirmed that he was contacted by MCCULLOUGH in January or February of 2023. [MV6] stated the MCCULLOUGH asked him for a picture of his penis in exchange for a 'care package'[3] which, is known to [MV6] to mean Ethika underwear based on previous conversations with MCCULLOUGH." (Dkt. No. 57 at 71–72.) The Court does not read the affidavit as avowing that MV6's conversations with McCullough were private. And, as the Government points out, that McCullough allegedly Snapchatted other children is not exculpatory, and "including MV6's supposition that McCullough attempted to exploit other "kids" too would only have bolstered probable cause."[4] (Dkt. No. 123 at 9.)

4. <u>"Detective Welsh failed to include references to a 'fake social media account'"</u>

---

[3] McCullough further argues that "care package" is a term that Detective Welsh created. (Dkt. No. 108 at 15.) However, in the interview, Detective Welsh references a "text string" in which an individual used the term "care package." (Dkt. No. 65, Exh. 4A at 18.) MV5 confirmed that was a "ubiquitous term amongst [the] team where that's what [McCullough was] calling it." (*Id.*)

[4] McCullough also argues that Detective Welsh failed to include McCullough was "joking" when he asked minors for sexually explicit images. (Dkt. No. 108 at 17.) The Court finds this does not cast doubt on probable cause.

In their interview, MV5 told Detective Welsh that he had a social media account "labeled as [McCullough], but it's like jokes about him." (Dkt. No. 65, Exh. 4A at 73.) McCullough argues this was a material omission, but Detective Welsh was under no obligation to include this information in the affidavit, as the relevant information was included—that McCullough requested sexually explicit photos from MV6. The Court finds these were not misrepresentations or omissions.

5. Public records request

The warrant affidavit states that MV5's mother "was able to send me text messages which included pictures of a Snapchat messaging screen showing a conversation with Brody where he talks about being asked for a 'dick pick' from MCCULLOUGH in exchange for a 'care package' which [MV5] explained was Ethika underwear." (Dkt. No. 57 at 71.) McCullough attached to his motion for reconsideration a public records request filed with the City of Tacoma, requesting any documents pertaining to the investigation of McCullough. (Dkt. No. 108-1.) The record request does not show that the Tacoma Police Department received text messages from MV5's mother. (*See id.*)

The Government believes the text messages were "inadvertently deleted as a result of an auto-deletion feature on Det. Welsh's phone," which the Government disclosed to McCullough in October 2025. (Dkt. No. 123 at 18.) The Government received copies of the materials MV5's mother had provided and produced them to McCullough on August 12, 2026. (*Id.*) Among the materials is a screenshot in which MV6 wrote, "[McCullough] said if i send him a dick pic he would give me a care package." (Dkt. No. 123-1.)

Regardless of the Government's negligence in retaining this evidence, it has obtained new copies of the materials, including the text messages referenced in Detective Welsh's

affidavit. The Court finds these were not misrepresentations or omissions, and in fact the exhibit supports the assertions within the affidavit.[5]

## IV CONCLUSION

For the foregoing reasons, the Court DENIES McCullough's motion for reconsideration (Dkt. No. 107) of the order denying his motion to suppress.

Dated this 2nd day of September, 2026.

David G. Estudillo
United States District Judge

[5] Separately, McCullough argues that Detective Welsh failed to include (1) Detective Welsh told MV5 and MV6 they were not in trouble, and (2) McCullough deleted his Snapchat account before the investigation started. (Dkt. No. 108 at 6, 25.) Once again, the Court concludes these alleged omissions do not cast doubt on the existence of probable cause.