HONORABLE DAVID G. ESTUDILLO

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>and<br><br>BRYANT KEITH MCCULLOUGH,<br><br>Defendant. | NO. CR23-5144 DGE<br><br>DEFENSE TRIAL BRIEF & MEMORANDUM OF AUTHORITIES, RE: MOTIONS IN LIMINE & SUPPRESSION & TEMPORAL LIMITATIONS, & FRE 404B/414 |

COMES NOW the Defendant, BRYANT KEITH MCCULLOUGH, by and through his attorney, BRYAN G. HERSHMAN, and presents this Trial Brief and Memorandum of Authorities regarding Motions in Limine.

**LEGAL ISSUES PRESENTED:**

LEGAL ISSUE NO. 1: SHOULD THE DEFENSE BE ALLOWED TO RENEW ITS MOTION TO SUPPRESS THE 3.10.23 WARRANT, ***WHEN*** A CASE LAW DECISION, WAS DECIDED ON 7.17.26, AND ***WHEN*** SAID CASE LAW HAS DRAMATIC APPLICATION TO THE CASE AT BAR, REF. <u>*USA VS. HOLCOMB*</u>, 9th CIRCUIT COURT OF APPEALS, SLIP OPINION 23-469, AND ***WHEN*** THE *HOLCOMB* DECISION WAS NOT AVAILABLE TO THE DEFENSE TO SUPPORT ITS PRIOR REQUESTS TO SUPPRESS, AND, *WHEN*, THE HOLCOMB COURT WAS DEALING WITH AN ISSUE/STRATEGY EMPLOYED BY THE



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

SAME AUSA AS IN THE CASE AT BAR?

LEGAL ISSUE NO.2: SHOULD THE COURT SUPPRESS THE 3.10.23 WARRANT, BASED UPON A LACK OF TEMPORAL LIMITATION IN THE WARRANT, AND THE EXECUTION THEREOF, WHEN THE APPLICATION IN SUPPORT OF SAID WARRANT ESTABLISHED THAT NO CULPABLE ACTIVITY WAS ALLEGED OR KNOWN, PRIOR TO 11.24.21, I.E., THE DATE UPON WHICH DET. WELSH IDENTIFIED, AT THE FRANKS HEARING AND IN HIS REPORTS, AS THE ORIGINAL GENESIS OF HIS INVESTIGATION INTO MCCULLOUGH, TO-WIT: 11.24.21 WAS THE DATE WHEREON "MV/DJ" AND MV3 MET TO HAVE SEX, AND WHEN SAID SEX WITH A MINOR WAS ILLEGALLY FILMED BY MV3?

LEGAL ISSUE NO.3: WAS THIS WARRANT, AND THE EXECUTION OF THE WARRANT, TOTALLY LACKING ANY TEMPORAL LIMITATION, AND SHOULD THE TEMPORAL LIMITATION HAVE LIMITED THE EXECUTION OF THE SEARCH TO 11.24.21, ***WHEN***, DET. WELSH TESTIFIED AT THE FRANKS HEARING, AND REFERENCED IN HIS REPORTS, THAT HE WAS NOT AWARE, AT THE TIME HE APPLIED FOR THE WARRANT, OF ANY CRIMINAL CONDUCT OR CONDUCT GIVING RISE TO PROBABLE CAUSE, PRIOR TO 11.24.21, AND, ***WHEN***, 11.24.21 WAS IDENTIFIED AS THE DATE ON WHICH MV3 ILLEGALLY FILMED HIM/MV3 HAVING SEX WITH ANOTHER MINOR/DJ, AND, ***WHEN***, 11.24.21 WAS GIVEN TO TPD OFFICER JARED WILLIAMS BY MV/DJ AND HER MOTHER, AND, THEREAFTER, WHEN THIS INFORMATION WAS PROVIDED TO DET. WELSH BY OFFICER WILLIAMS, AND WHEN THE SUBJECT INFORMATION, REFERENCE THE ILLEGAL FILMING OF SEX WITH A MINOR WAS SPECIFICALLY DATED TO 11.24.21, AND, ***WHEN***, THIS WAS THE ONLY INFORMATION OF CRIMINAL CONDUCT PROVIDED TO DET. WELSH AT THE OUTSET OF THIS INVESTIGATION, AND, WHEN, THE ILLEGAL 11.21.24 FILM WAS THE SOLE BASIS FOR PC IN THE 3.10.23 WARRANT?

LEGAL ISSUES NO. 4: SHOULD THE TEMPORAL LIMITATION OF THE WARRANT HAVE BEEN LIMITED TO 11.24.21 THROUGH 3.10.23, ***WHEN***, AS PREVIOUSLY STATED, NO CULPABLE ACTIVITY WAS KNOWN TO LAW ENFORCEMENT PRIOR TO 11.24.21, AND, ***WHEN*** THE EXECUTION OF THE SEARCH FAR EXCEEDED ANY/ALL BOUNDS OF TEMPORAL LIMITATION, ***WHEN***, THE EXECUTION OF THE WARRANT WENT SO FAR AFIELD THAT REPORTS GENERATED FROM THE SEARCH DATED BACK TO WHEN MCCULLOUGH WAS A MINOR, AS MUCH AS 14 YEARS PRIOR TO THE DATE TO WHICH THE



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

WARRANT/EXCUTION SHOULD HAVE BEEN TEMPORARILY LIMITED, E.G., (1) REPORTS DETAILED PHOTOGRAPHS TAKEN IN 2007 REGARDING TRIPS TO POINT DEFIANCE PART, AND CHAMBERS BAY CHAMBERS BAY GOLF COURSE; (2) ELECTRONIC FILES FROM 2009 CONTAINING MCCULLOUGH'S COLLEGE ESSAYS AND MCCULLOUGH'S MUSIC; (3) WHEN PHOTOGRAPHS WERE DETAILED BY THE GOVERNMENT FROM A 2014 TRIP TO ITALY (THAT GIFTED TO MCCULLOUGH IN HONOR OF HIS COLLEGE GRADUATION, AND WHEN SAID ILLEGALLY SEIZED PHOTOGRAPHS WERE INAPPROPRIATELY USED AGAINST MCCULLOUGH AS ESTABLISHED IN THIS MEMORANDUM, INFRA.), AND WHEN LAW ENFORCEMENT USED SOME SORT OF GEOGRAPHICAL PROGRAM TO IDENTIFY A CASTLE IN ONE OF THE PHOTOGRAPHS TO VERIFY MCCULLOUGH'S LOCATION AT THE TIME THE PHOTO WAS TAKEN; AND (4) WHEN PHOTOS WERE DETAILED OF MCCULLOUGH'S TRIP TO CABO (AND WHEN THESE PHOTOGRAPHS WERE INAPPROPRIATELY USED AGAINST MCCULLOUGH, AS DETAILED IN THIS BRIEF, INFRA.)

LEGAL ISSUE NO. 5: SHOULD THE GOVERNMENT BE ALLOWED TO INTRODUCE ANY EVIDENCE, THE ORIGINATION OF WHICH, PREDATES 11.24.21?

LEGAL ISSUE NO. 6: SHOULD THIS COURT SUPPRESS ANY/ALL EVIDENCE, THE GENESIS OF WHICH PREDATES 11.24.21, WHEN THE SEARCH AND EXECUTION EXCEED ANY APPROPRIATE TEMPORAL LIMITATION, ***WHEN*** MCCULLOUGH HAS BEEN PREJUDICED BY SAID EVIDENCE/EVIDENCE THAT PRE-DATES 11.24.21, ***WHEN***, EVIDENCE OF THE ITALY TRIP AND MEXICO TRIP WERE USED BY THE GOVERNMENT AGAINST MCCULLOUGH AT HIS BAIL HEARING, I.E., IT WAS PART OF THE GOVERNMENT'S ARGUMENT IN SUPPORT OF DETAINING MCCULLOUGH, AND, ***WHEN***, THE ONLY EVIDENCE RELEVANT TO THE INSTANT CHARGES WAS DISCOVERED BY THE GOVERNMENT, IN VIOLATION OF ANY POSSIBLY APPROPRIATE TEMPORAL LIMITATION, I.E., THE FILM CLIP OF MV4 MASTURBATING & EXPOSING HIS/MV4'S GENITALIA (THE GOVERNMENT'S EVIDENCE OF THE CRIMES/ALLEGATIONS NOW AT BAR), AND, ***WHEN***, ELECTRONIC DATA OF MV4'S MASTURBATION/PHOTOS OF HIS PENIS WERE TAKEN OFF OF MCCULLOUGH'S MEMORY CARD, AND ***WHEN*** THE DATE OF THESE REFERENCED FILES PREDATED 11.24.21, BY AS MUCH AS 12+ MONTHS?

LEGAL ISSUE NO. 7: SHOULD THE GOVERNMENT BE PROHIBITED/IN LIMINE



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

FROM INTRODUCING ANY EVIDENCE, THE GENESIS OF WHICH, PREDATES 11.24.21?

LEGAL ISSUE NO. 8: SHOULD THE COURT EXCLUDE/IN LIMINE, THE GOVERNMENT'S ATTEMPT TO ADMIT 404B/414 EVIDENCE OF CARTER STOCKBRIDGE IN THE ABOVE-LISTED CASE, FOR ANY REASON:

This brief is based on the record, the Government's Motions in Limine dated 8.7.26, the accompanying defense memorandum, and the subjoined memorandum.

DATED this 30TH day of SEPTEMBER, 2026.

Presented by:
BRYAN G. HERSHMAN LAW OFFICE

By: /s/ Bryan G. Hershman
BRYAN G. HERSHMAN, WSBA #14380
Attorney for Defendant MCCULLOUGH

**SUBJOINED MEMORANDUM & TRIAL BRIEF**

**STATEMENT OF FACTS AND CASE**

**MEMORANDUM OF AUTHORITIES**

**++I. MOTION IN LIMINE, RE: TEMPORAL ISSUES: MOTION TO RESTRICT THE GOVERNMENT FROM INTRODUCING EVIDENCE THAT PREDATES 11.24.21, AND ORDER ALLOWING THE DEFENSE TO REOPEN FILING DEADLINES FOR MOTIONS TO SUPPRESS, BASED ON A LACK OF AND VIOLATION OF TEMPORAL LIMITATIONS, AND BASED UPON CRITICAL CASE LAW ONLY DECIDED OVER THE LAST TWO MONTHS.**

**++PROCEDURAL ISSUES, ASSOCIATED WITH THIS MOTION:**

> "No Pre-Trial motion may be filed subsequent to [the deadline for such matters], except upon leave of the Court for good cause shown."

Id at Federal Rules of Criminal Procedure: (12)(c)(3)). In support of this motion, please reference the declaration of attorney, Bryan Hershman.



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

Generally, to obtain relief from waiver under Rule 12(e), a party must present a legitimate explanation for his failure to raise the issue in a timely manner. Id., at <u>*United States v. Anderson*</u>, 472 F.3d 662 (9th Cir. 2006).

> "Good Cause" is a flexible standard that requires consideration of all interests in the particular case."

Id., at Fed R. Crim. P. 12(c)(3) advisory committee-2014.

> "Courts have determined: That good cause exists when a party could not have timely submitted the motion because of a late production of discovery materials; **an intervening change in the law; or recently discovered evidence that was not available**,"

Id., at <u>*United States v. Loo*</u>, 2025 US DIST LEXIS 106229, (W.D.WA June 4, 2025). (Our emphasis).

> "Courts have repeatedly found good cause exists when a party could not have timely submitted the motion due to an **intervening change in the law**."

Id., at <u>*United States v. Muller*</u>, 889 F.2d 239,240 (9th Cir. 1989)) (Issued in <u>*United States v. Holcomb*</u>, no. 23-469). (Our emphasis).

**++SUPPRESSION AT THIS STAGE OF THE PROCEEDINGS:**

The Ninth Circuit Court of Appeals history with its decisions issued is complicated, and has included a suppression of evidence, a motion to reconsider granted in favor of the Government denying suppression, a timely appeal, an initial ruling by the Ninth Circuit which overturned the denial of suppression, reversing the conviction in early 2025, with that opinion being withdrawn in September 11-12, 2025 in response to the Government's petition for rehearing. That process took approximately 10 months, when the Court issued its updated opinion on July 17, 2026, just over two months ago. Due to the withdrawal of the opinion in September 2025, the *Holcomb* case was essentially unsettled, and the withdrawal of the opinion made citation of precedent unauthorized. Therefore, once the final decision was issued by the Court, the Defense sought to present the issue due to an intervening change in the law relative to temporal limitations,



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

the dissipation of probable cause, overbroad and impartiality, and application of the plain-view doctrine.

**++IMPROPER TEMPORAL LIMITATION:**

The Defense brings forth new legal authority, issued by the 9th Circuit Court of Appeals in the case *United States v. Holcomb* - NO 23-469, which was issued by the Court July 17, 2026, just over 2 months ago, meaning the decision in that case came over 14 months after the Court's Pre-Trial Motion deadline closed in this case. The facts of the *Holcomb* case, along with the tactics of Police who investigated, prosecutors passing the case around, all into the hands of AUSA Matthew P. Hampton, who then brought Federal Charges are the EXACT same in the *Holcomb* case, as they are in the instant case. By utilizing a warrant without any temporal limitations, Police investigators were able to examine DECADES of files, going well outside the scope of Probable cause which was originally stated in the Warrant application.

On March 10, 2023, Det. Welsh filed for and received a warrant authorizing the following search and seizure of McCullough's Personal property/devices:

> "(1) Personal Computer hardware, to include: computer system, internal and peripheral storage devices, external hard drives, optical storage devices, video cameras, digital cameras, cell phones, and ANY other memory storage devices.
>
> * * *
>
> (5) Digital data that may be kept on ANY related storage device as listed in #1 above. The specific data will be (or will contain or incorporate) digital video and/or images depicting minors engaged in sexually explicit conduct, ANY digital data related to the crimes listed above, as defined by RCW 9.68A.011(4), and ANY user attribution evidence to include, but not limited to: Registry information, Configuration files, User Profiles, email address books, Chat, instant messaging logs, photographs, and correspondence (and the data associated with the foregoing such as file creation and last accessed dates) that may be evidence of who used or controlled the computer or storage medium at a relevant time."

Id.



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

On its face, Det. Welsh's affidavit, and warrant authorized, granted Tacoma Police and Det. Welsh to seize ANY digital devices, located in the residence of McCullough, and to then search and forensically examine ANY data on ANY of the devices seized, regardless of the date, type, creation date, or any other factor. The Search warrant authorized by the 3.10.23 affidavit gave Detective Jimmy Welsh, and Tacoma Police Forensic Investigator Detective Darrin Reda the unfettered ability to utilize their own Personal discretion as to what was, or was not included within the scope of the 3.10.23 warrant. Indeed, an analysis of Det. Reda's Forensic Incident Report (BATES 303-309) shows how he examined thousands, if not tens of thousands of documents/files/images which were ALL entirely outside the scope of the warrant. The digital data aspect (#5) allowed Police to search ANY data on ANY device recovered, effectively creating a wide-ranging scope, beyond the stated probable cause, creating the ability to exploratory rummage through McCullough's entire digital existence. Thus creating an impartial and generalized search, allowing investigators to peruse each file in search of ANY evidence of a crime.

However, there are a few specific facts from Det. Reda's forensic report which demonstrate the extreme lengths law enforcement went to in order to establish this case. ***First***, Det. Reda's examination uncovered NO digital evidence of the 5 State charges that Det. Welsh alleged in the 3.10.23 Application. He located, no evidence of the MV1/AG alleged photo, (ref., the photo of McCullough's face and the disgusting writing beneath the photo) no evidence of the State allegations pertaining to MV2/CS, (ref. McCullough molesting MV2) no evidence of the previously referenced MV3/DJ illegal sex video, and no evidence of A.M/B.D's alleged solicitations by McCullough (ref. McCullough soliciting BD for "dick-pics" or pictures of AM in his underwear) and, finally, no evidence of MV3 using marijuana with McCullough. Thus, the allegations which Det. Welsh used to obtain Probable cause to Search McCullough's devices, resulted in NO evidence of these crimes being found. As previously established, the only



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

information available to Det. Welsh at the outset of this investigation, and at the time he signed the Application, were incidents that took place between the dates of November 24, 2021 through March 10, 2023. Yet Det. Welsh and Det. Reda did not confine their search to the Period in which Probable cause existed. Next, they expanded the scope of their search, outside the investigative period, knowing that probable cause had dissipated for the crimes which had secured the Warrant. Thereby going back further, when McCullough had no prior criminal history, or suspicion of crimes in order to locate its evidence-in-chief in this case. Only by illegally expanding the scope of the Warrant, and by searching nearly 20 years of Personal digital records were police investigators able to bring charges in this case. Without question - this case and investigation **DOES NOT emanate from any evidence or facts gathered before November 24, 2021.** Det. Welsh's Application indicates McCullough allegedly possessed and distributed Depictions of Minors Engaged in Sexually Explicit Conduct **no earlier than 2021**. Despite this critical fact, the warrant authorized police and investigators to search and seize all data found on ANY digital device located in McCullough's apartment with **no limit on the age** of the data to be searched.

A review of Det. Reda's report demonstrates how far Reda's search/examination went:

> "On 3.14.23 Det. Welsh contacted me, regarding a forensic search of several digital devices, related to this case. He provided a Request Form and a copy of a Search warrant, along with numerous electronic devices... A review of the data showed most of the images appeared to be personal pictures and buildings. Some of the material contained metadata that showed the images were from **2007.** Further processing showed over 400 images (carved) that appeared to be pictures of Seattle and Point Defiance Zoo, some of the images metadata showed these images were from **2007.** A USB Flash stick was imaged and found only to contain School work and music from **2009.** The second drive has personal etching for NLS - Northwest Landscaping Services. The data from this drive appears to be from **2019** and contains NLS bidding templates. The unallocated space was carved for more images, which produced an additional 192, but they simply appeared to be deleted **images of a vacation from Rapallo, Italy** (judging by the Castle portrayed in the pictures)."



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

Id., at Det. Reda's Forensic Report. BATES 305-307) (Items #5,7(b), and 13 of report. (Our emphasis).

Law enforcement reports detailed a forensic examination of McCullough’s personal photos and files **back to 2007**, when McCullough himself, was just 17 years old. For example, family vacations were noted, when McCullough was between 17-32 years of age. Accordingly, McCullough's entire digital footprint was searched, to a time period dating back to his teenage years. The Court must keep in mind, that as of 3.10.23, the entire breadth of this investigation, only dated back **17 months**, to the date of 22.24.21.[1]

Therefore, the question before this Court, which was also raised in *Holcomb*, is does an allegation of the possession/distribution of CSAM, which only the original producer has actually seen, but that no law enforcement officer ever reviewed or saw, give rise to search, seize, and forensically examine ALL of McCullough's devices and digital existence, predating the appropriate temporal time period by over 18 years (prior to 11.24.21)? A Person with no criminal history, no confirmed CSAM possession, and no other allegations of CSAM possession. Does this allow investigators to subvert the stated probable cause for the search, and simply Search everything - even after they failed to locate ANY evidence which was the basis of the warrant to start? The answer is no - and the Defense will endeavor to prove why in this pleading.

The *Holcomb* Court, examining a warrant without any limitations on its dominion and control provision, was ruled as overbroad and insufficiently particular because the warrants dominion and control provision lacked any temporal limitations. The *Holcomb* Court confronted with a similarly broad search, confronted the following issue:

---

[1]. This temporal fact, i.e., of a 17 old allegation, has particular relevance, when this Honorable Court will consider the import of the Holcomb decision, cited infra. As stated, the Holcomb decision was not available to the defense until two months ago.



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

> "The computer contained thousands of files stored across separate 'upper' and 'lower' hard drives. The hard drives contained files created during different time periods. **Rather than use an available computer program that would have allowed [Det. Neufeld] to filter the computer files by date and time, or otherwise to limit his search to the period surrounding the alleged rape, Det. Neufeld pulled up all the videos and started just scrolling through them**."

Id.

This, effectively authorized officers to rummage through years worth of data, including intimately personal data, at the complete and total discretion of the reviewer/investigator. The Court found that officers had in fact executed the warrant in an indiscriminate manner, declining to limit their search to the relevant timeframe, watching old videos. Most importantly, when officers found exculpatory evidence that dissipated probable cause altogether, they nevertheless continued to search pursuant to unspecified "Standard Procedures." The Court went on to address the Dominion and Control provision further:

> "Unlike the other provisions of the warrant which were limited to communication between Holcomb and TJ, surveillance footage, locations data, computer's search history - the dominion and control provision was not limited to a particular type of evidence. In addition, again, unlike the other provisions, the dominion and control provision lacked any temporal limitation, thereby authorizing the state to open and examine any file from any time period, including files that long predated the alleged rape. The Government's lawyer (Assistant US Attorney Matthew P. Hampton) conceded as much during oral argument stating that 'almost any file could be opened to determine if it was responsive' to the dominion and control provision."

Id.

This argument, will almost certainly be recycled by AUSA Hampton in response to this motion. However, as the Court went on to find that once probable cause dissipates, officers no longer have authority to search. Thus, the Government sought to rely on the Plain-View Doctrine:

> "Under the doctrine, the government may seize evidence without a valid warrant so long as government officials are lawfully searching



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

> the area where the evidence is found and the incriminating nature of the evidence [is] immediately apparent."

Id., at United States v. Stafford, 416 F.3d 1068 (9th Cir. 2005).

However, the Court found that the Government cannot meet its burden because the officers were not lawfully searching the area where the evidence was found. Having found the video evidence while executing a general warrant, after their stated probable cause had dissipated, along with good faith. The Court clarified its position on dissipation saying:

> "What must dissipate is not all suspicion of guilt; what must dissipate is probable cause, which means a 'fair probability' or 'substantial chance' that the defendant has committed the crime being investigated."

Id., at Stafford Unified Sch. District No. 1 v. Redding, 557 US at 371, 129 S.Ct. 2633, 174 L.Ed 2d 354 (2009).

The *Holcomb* Court proposed a hypothetical case in order to highlight the Fourth Amendments reasonableness requirement, writing:

> "Consider a hypothetical case of precious jewels missing from a local museum. Many signs point to an eccentric millionaire's having stolen them: he has a history of jewel thefts, he is known to covet the missing jewels in particular, and witnesses report seeing him near the museum around the time that the jewels went missing. Probable cause exists, officers obtain a search warrant to search the suspects mansion thoroughly, and they speed off toward the rascals house. On the way, officers receive a phone call from headquarters: the jewels have been discovered in the museum, museum staff confess that they placed the jewels in the wrong storage safe by accident, and surveillance video confirms the mix-up. Probable cause as to the suspect has dissipated... But imagine if the discovery occurred just after the officers began searching the first of the mansion's twenty rooms. Then applying the dissenting opinion rule that new information must arise before the search has begun, the officers may continue searching the remaining nineteen rooms - looking in every nook and cranny of the house, even though everyone knows that the jewels are elsewhere and that the suspect is innocent - all because of the happenstance that the discovery occurred after the search began. The dissenting opinions proposed condition is flatly unreasonable as well as unsupported by precedent. The Fourth Amendment does not impose an artificial timing



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

> requirement that probable cause must dissipate by a particular deadline or else officers can simply ignore new evidence."

Id., at United States v. Holcomb, 153 F.4th 1105.

The Court would go on to find there is NO authority suggesting that a warrant to search for one crime authorizes a full search for ANY crime at all, even after probable cause has dissipated as to the crime listed in the warrant. The Court would go on to include in its conclusions that:

> "That suppression may be appropriate when officers violate the Fourth Amendment, deliberately, recklessly, or with gross negligence, and when the case involves 'systemic negligence on the part of law enforcement.'"

Id., at *Davis*, 564 US 240, 131 S.Ct. 2419 (180 L.Ed 2d 285 (2011).

> "Given the vast amount of data stored on computers, a 'heightened' specificity requirement applies in the computer context."

Id., at United States v. Adjani, 452 F.3d 1140, 1149 (9th Cir. 2006).

The questions laid before the *Holcomb* Court, and its opinion by the majority, raise questions about what constitutes an overbroad search, what happens when evidence of the crimes being investigated is not found, or for that matter further exculpatory info which dissipates probable cause, does that thus end the authority to search especially one determined to be temporally unlimited in its scope, even though there is a known investigative period. The questions of fact and law, apply directly here in McCullough's case.

**++MCCULLOUGH'S CASE/WARRANT RAISES SIMILAR QUESTIONS AS IN HOLCOMB:**

What is clear from the outset, is that **neither Det. Welsh, nor the Government possess any information prior to November 24, 2021** that McCullough has EVER committed any crime, or criminal act. In fact, the Government wrote,

> "Here, Det. Welsh's affidavit established a course of conduct - dating to at least November 2021."



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

Id., at Govt's Response to Combined Motions pg 13, lines 1-2)

In fact, **Det. Welsh conceded, on the stand at the Franks Evidentiary Hearing, that on November 24, 2021, Jean Bassett called the Tacoma Police to advise her daughter DJ had been surreptitiously filmed having sex, and it was this report which was the Genesis of Det. Welsh's investigation of McCullough**. Det. Welsh was further asked:

HERSHMAN: Did you receive any information, any of these steps beginning on November 24 of 21 through March 10 of 23, did you discover any information indicating to you that McCullough was a suspect of criminal conduct relative to CSAM and the like **predating November 24 of 2021**; have you come by any information about that?
DET. WELSH: **No.**

Id., at Franks Hearing Transcript Pg 69 line 13. (Our emphasis).

Defendant has been prejudiced by this temporally illegal search, i.e., there was no PC to obtain any of the following electronic data. The Defense also presents the Government's usage of evidence outside the scope of the 3.10.23 warrant in the Defendants **detention hearing** in this matter. **The Government and AUSA Hampton sought to introduce family vacation photos from Rapallo, Italy from 2014, as well as photos from a family vacation to Cabo San Lucas, Mexico in 2016 - these photos were taken when McCullough was 24 and 26 years old respectively**. These photos were admitted arguing they showed, "*the potential for minor victims potentially around the world*." These photos were searched and seized pursuant to the 3.10.23 warrant, notwithstanding the fact that NO probable cause existed to believe ANY evidence of any crime had been committed in 2014-2016 by McCullough. Further demonstrating that there was ABSOLUTELY no search protocols/temporal limitations which were utilized to conduct such an expansive search of McCullough's digital existence.

The 3.10.23 search warrant authorized the search/seizure/forensic examination of ALL McCullough's devices for evidence of the Crimes of: (1) Possession of Depictions of Minors Engaged in Sexually Explicit Conduct (2) Dealing in Depictions of Minors Engaged in Sexually



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

Explicit Conduct (3) Child Molestation (2nd Degree) (4) Sexual Exploitation of a Minor (5) Distribution of a Controlled Substance to a minor. This Court should take notice that **NO evidence digital or otherwise of any of the 5 alleged crimes was located on ANY of McCullough's digital devices or within his digital data**.

**<u>Moreover, showing the necessity of temporal limitations in the warrant, evidence established the following</u>**:

-MV1 specifically alleged in approximately February 2022, he was sent the disgusting image with McCullough's face with words superimposed beneath.

-MV2, through his mother, told Det. Welsh on March 8, 2023 that within the last 4-6 months he had allegedly been inappropriately touched while sleeping (October 2022-December 2022)

-Jean Bassett had called TPD to report the MV3/DJ alleged video on November 29, 2021, with the actual incident occurring November 24, 2021.

-AM/BD reported that in January/February 2023 they were allegedly solicited for inappropriate photographs.

These facts, and the corresponding dates were all known to Det. Welsh prior to the production of the 3.10.23 Affidavit. Thus, Det. Welsh was well aware of the relevant-time period, November 24, 2021 to March 10, 2023, as each alleged witness provided a time-line of events during his investigation. **Yet, Det. Welsh had NOT confirmed McCullough actually possessed a single file of Child Pornography**. As both AM/BD stated that they never sent any such images to McCullough, and no one, other than MV3 had seen the contents of the MV3/DJ video to confirm if it contained CSAM. Every provision of the 3.10.23 warrant lacked any temporal limitation to the stated probable cause, which created an impartial and overbroad search. Det. Welsh was unable to provide any reason why such a broad search was necessary in this case given the facts within his possession.



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

In no way does any actual underlying evidence support the conclusion that McCullough was a collector of anything.

> "The government DID NOT limit the scope of the seizure to a timeframe within which the suspected criminal activity took place, even though the government was aware of the relevant time period when it sought the warrant."

Id at *United States v. Kow*, 58 F.3d 423 (9th Cir. 1995).

Courts from across the 9th Circuit, and sister circuits have ruled similarly as to the issues involving digital forensic searches which are lacking completely any temporal limitations, or limitless searches of data, including that of computers and digital devices, fails to satisfy the 4th Amendments particularity requirement:

> "This warrant essentially contemplates the right to search EVERYTHING seized. Merely enumerating ALL potential search areas DOES NOT satisfy particularity. The Court finds the absence of ANY temporal limitations DOES create an overbroad issue because the warrant authorizes searches of vast amounts of information for which the government lacked probable cause."

Id., at *United States v. Lofstead*, 574 F.Supp. 831 (9th Cir. 2021)

> "Wisely, the Government DOES NOT contest that a warrant authorizing a search of ANY and ALL data or information stored on a computer would be anything but the sort of wide-ranging search that fails to satisfy the particularity requirement."

Id., at *United States v. Otero*, 563 F.3d 1127 (10th Cir. 2007)

Going further the Lofstead Court found:

> "When faced with a warrant that authorizes an unrestricted search of almost all, if not all [explicitly] all content on a cell phone, an executing officer behaving in good faith should know that such a search is objectively unreasonable and would likely violate the Defendant's Fourth Amendment rights."

Id., at *United States v. Lofstead*, 574 F.Supp. 3d 831 (9th Cir. 2021)

> "A warrant with a temporal limitation that antedated the relevant crime period by only 4 days was impermissibly overbroad."



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

Id., at United States v. Roberts, 430 F.Supp.3d 693, 717 (D. Nev. 2019)

The issues with the 3.10.23 warrant here, are similar to those which the 9th Circuit dealt within the case of *Holcomb*, using binding and longstanding precedent to issue its decision. No reasonable officer would continue searching after probable cause dissipated, and that the disputed evidence was not in plain-view. Similar to *Holcomb*, the 3.10.23 affidavit contained no grounds to seek or find probable cause to conduct a search much less a completely limitless search for dominion and control evidence. Apart from the dominion + control provision of the warrant, the affidavit does not mention dominion and control.

> "**Because Holcomb's computer contained thousands of files, and because the Dominion + control provision did not contain any temporal limitations, the examiner exercised unfettered discretion to decide which files to scroll past and which files to open and examine. That type of broad discretion raises significant particularity concerns**."

Id., at United States v. Holcomb, 153 F.4th 965 (9th Cir. 2026).

It is important thus, to remind the Court, of the Fourth Amendment standards upon which any decision as to the constitutionality of the 3.10.23 warrant are subject to:

> "Specificity has two aspects: particularity and breadth. Particularity is the requirement that a warrant must clearly state what is sought. Breadth deals with the requirement that the scope of a warrant be limited by the probable cause on which the warrant is based."

Id., at United States v. Towne, 997 F.2d 537, 544 (9th Cir. 1993).

The issue with respect to temporal limitations focuses on breadth, and the scope of the search being limited by Probable cause for the crimes being investigated. By creating an unlimited scope, the only limitations are the discretion of law enforcement investigators.

> "The particularity requirement of the Fourth Amendment prohibits the exploratory rummaging in a person's belongings."

Id., at Andresen v. Maryland, 427 US 463, 480, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976).



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

Courts of the Ninth Circuit therefore consider three factors in determining whether a warrant is impermissibly overbroad:

> (1) Whether Probable cause existed to seize all items of a category described in the warrant; (2) Whether the warrant set forth objective standards by which executing officers could differentiate items subject to seizure from those which were not; and (3) Whether the Government could have described the items more particularly in light of the information available.

Id., at United States v. Lei Shi, 525 F.3d 709, 731-32 (9th Cir. 2008).

Beginning with **(1)**, it is CLEAR that Probable cause DID NOT exist to seize "Digital data that may be kept on ANY related storage device as listed in #1 above." This sentence ALONE implies ALL data is subject to search and seizure. By utilizing the phrase "will contain or incorporate" with regard to specific data, the illusion of specificity reappears, until the end, where email addresses, chat, instant messaging logs, photographs, and correspondence are INCLUDED. One can only assume that this certainly means ALL other readable data on a device. **None of this data was limited to November 2021-March 2023**, the investigators relevant investigative period, meaning there was not P.C. outside of that period to examine ANYTHING. **(2)** Simply delineating all electronic devices as being capable of being seized in this case WAS Det. Welsh's strategy. However, **ZERO evidence contained in the affidavit even hinted that McCullough owned any electronic devices, whatsoever**. Det. Welsh went so far to state in his application, "***That once identified, there is probable cause to believe McCullough's devices will show DMESEC***." It is clear from Det. Reda's forensic analysis that **absolutely no objective standards were followed to help him differentiate which files he viewed were subject to seizure, and which were not**, given that files outside the scope of the warrant for Search/seizure were presented in Court against McCullough. **(3)** Det. Welsh could have very easily requested a search warrant for search/seizure/forensic examination of McCullough's iPhone for communications/correspondence, along with photo and video evidence of DMESEC from



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

November 21, 2021, through March 10, 2023, along with any digital metadata to support the concept of who controlled the device at that time.

**Det. Welsh knew from his investigation that MV1, MV3, AM/B.D, ALL had communicated ONLY via Snapchat, which by Det. Welsh's own admission was a CELL-PHONE only application**. However, while the Defense anticipates that the Government will seek to expand its search authority to McCullough's other digital devices, i.e. computers, memory cards, thumb sticks, etc., this does not diminish the fact that searching outside the relevant period was supported by no probable cause. But, Det. Welsh and Det. Reda's failure to locate any evidence of the 5 stated crimes supporting Probable cause for the issuance of the 3.10.23 warrant dissipated probable cause to keep searching.

> "The government [does not have] an automatic blank check when seeking or executing warrants in computer-related searches. Although computer technology may in theory justify blanket seizures, the government must still demonstrate to the magistrate factually why such a broad Search and Seizure authority is reasonable in the case at hand."

Id., at *United States v. Hill*, 459 F.3d 966, 975 (9th Cir. 2006).

The search techniques which were identified in the 3.10.23 warrant were NOT adhered to by either Det. Welsh or Det. Reda, who were responsible for searching/seizing and ultimately conducting the forensic search. The failure to adhere to the scope of the warrant lies at both their feet. Det. Welsh produced the overbroad, in particular search of McCullough's entire digital life, and then indiscriminately conducted a far-reaching search, seizing every single electronic device McCullough owned. He then sought the aid of Forensic Services within Tacoma Police Department, where he contacted Detective Darrin Reda. Reda would then examine ALL the devices with seemingly unlimited discretion, with said electronic data dating back 18 years before 11.24.21. Reda then provided his report to Det. Welsh, (Ref. Bates 311) providing Welsh



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

with information for which probable cause did not exist.[2] Of note, Det. Reda fails to identify any files evidence which was the basis of the 3.10.23 probable cause determination made authorizing the warrant. However, Det. Reda did NOT stop his Search once there was not a “fair probability” or even a “substantial chance” that evidence of the crime being investigated was located on McCullough's devices. Instead he searched back, first five years, then ten, fifteen, then twenty plus years looking for ANYTHING he could use. This is exploratory rummaging. Det. Reda was NOT lawfully searching the area in which he found the disputed evidence. The following quote demonstrates the extreme lengths requested by Det. Welsh, and granted by the Court in the pursuit of one unverified, un-viewed, alleged video of MV3/DJ, and the search tactics which were to be employed:

> “In some cases, it is possible for agents and analysts to conduct carefully targeted ESI searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant, and law enforcement personnel with appropriate expertise may need to conduct more extensive searches, such as scanning areas of the disc not allocated to listed files or peruse every file briefly to determine whether it falls within the scope of the warrant.”

Id., at 3.10.23 affidavit, BATES 228, lines 10-15.

What is clear is that Det. Reda chose to search every file, knowing that he had the technology and software to conduct a much more targeted search of Electronically Stored Information (ESI). Therefore, it is essential that this Court conduct a full evidentiary hearing with both Detective Reda and Det. Welsh to uncover the methods and tactics used to uncover the

---

[2]. The information provided to Det. Welsh were the referenced vacations, etc. Admittedly, the GoPro video was also provided, however, the date of this file was 1.17.21 (ref. Bates 312) also outside of the temporal time period.



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

Government's Evidence-in-chief in this case, in order for this Court to make a finding of fact as to the conduct of investigators in this case. And why the following statement, provided in the 3.10.23 affidavit was completely ignored:

> "7) As indicated above, these search will be limited to evidence of depictions of minors engaged in sexually explicit conduct and WILL NOT include looking for personal documents and documents and files that are unrelated to the crime."

Id., at 3.10.23 affidavit, BATES 229, lines 15-20.

The 3.10.23 warrant WAS NOT limited by the words within above. In fact, Det. Reda wrote that he reviewed at least thousands of photos going back nearly 20 years to 2007. College essays, music, word documents, it was all indiscriminately searched, regardless of the fact that the only reason that investigators were authorized to search was events from November 2021-March 2023, nearly 15 years later. As previously stated, the AUSA Mr. Hampton introduced into the record evidence of family photos from 2014 and 2016, as evidence of the risk of flight by McCullough, at the Detention Hearing. This very evidence was derived from the overbroad Search of data for which NO probable cause existed to search through. As outlined in this memorandum, the use of this illegally seized data, worked to the prejudice of McCullough. The use of these personal photos, unrelated to an allegation of Possession of Depictions of Minors Engaged in Sexually Explicit Conduct 5 to 7 Years later is a violation of McCullough's rights.

**++SINCE MCCULLOUGH WAS PREJUDICED BY USE OF THIS ILLEGALLY SEIZED DATA, EXCLUSION IS THE ONLY REMEDY:**

> "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the Justice system."

Id., at <u>*Herring v. United States*</u>, 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed 2d 496 (2009).

In the instant case, *LEON*, and the Good Faith Exception to the exclusionary rule cannot save the conduct of law enforcement in the instant case. As the Court found in *Lofstead*;



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

> "When faced with a warrant that authorizes an unrestricted search of almost all, if not explicitly all content on a cell phone, an executing officer behaving in good faith SHOULD know that such a search is objectively unreasonable and would likely violate the Defendant's Fourth Amendment rights."

Id., at _United States v. Lofstead_, 574 F.Supp. 3d 831 (9th Cir. 2021).

Paired with this Court's 2.9.26 decision finding that:

> "The Court finds (concludes) Detective Jimmy Welsh made reckless omissions in his application for a search warrant."

Id., at 2.9.26 Order, pg 1, lines 21-22.

The illegal conduct of Det. Welsh, along with Det. Reda continuing a forensically unlimited search of ALL McCullough's devices can in no way be found to be objectively reasonable. The probable cause was based on an unverified account of two minors who had sex November 24, 2021. While MV3 claimed he sent the video to McCullough, Det. Welsh utilized this as the basis for his search writing:

> "In light of the suspect being in receipt of a video depicting minors engaged in sexually explicit conduct and having distributed same depiction, there is probable cause to believe the suspect has possessed and distributed depictions of minors engaged in sexually explicit conduct in his Snapchat account, and that once identified, his devices and media will show minors engaged in sexually explicit conduct."

Id., at 3.10.23 Affidavit, Pg 37.

However, Det. Welsh and Det. Reda were UNABLE to locate ANY evidence of the above statement in ANY of McCullough's digital devices of any of these allegations. Knowing this, Probable cause dissipated, as to the grounds to search. Yet, like in *Holcomb*, investigators continued searching, outside the scope of Probable cause in this case entirely.

In this case, the exclusionary rule would bar the admission of the Government's Evidence-in-chief in this case, which was obtained by investigators searching outside the scope of



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

probable cause, the cases relevant investigative period, and subject to a general warrant. Simply no probable cause existed to believe McCullough had committed ANY crime prior to November 24, 2021 in Det. Welsh's own words:

> "Under the fruits of the poisonous tree doctrine, evidence seized subsequent to a violation of the Fourth Amendment is tainted by the illegality and subject to exclusion, unless it has been sufficiently purged of primary taint."

Id., at *Wong Sun v. United States*, 371 US 471, 83 S.Ct 401, 9 L.Ed 2d 441 (1963).

But for providing recklessly false omissions and statements made by Det. Welsh, and the utilization of temporally, unlimited search provision of ANY and ALL files on McCullough's digital devices was this single piece of evidence even located. Not a single piece of Det. Welsh's investigation pointed to McCullough owning ANY computers or other digital devices, or any memory cards.

The Government, as well as this Honorable Court have pointed to the Ninth Circuit Court of Appeals Case *United States v. Gourde*, 440 F.3d 1067 (9th Cir. 2005) attempting to connect the child pornography collector profile thus strengthen inferences of Use Of Computers. However, while *Gourde* technically is technically also a child pornography case - the totality of the circumstances present in *Gourde* are not factually present here. ***First***, Gourde was a verified Paid Subscriber monthly to a website the FBI verified was trafficking in child pornography. The FBI viewed the website and confirmed they were CSAM, as well as obtained credit-card processing information which verified that Gourde was an active, paid subscriber. The Ninth Circuit stated in this case:

> "Membership is both a small step and a giant leap."

Id., at *Gourde*, 440 F.3d at 1067.

***Second***, FBI agents could factually state to the reviewing magistrate by purchasing a paid monthly membership, Gourde wanted access to images of child pornography. ***Third,*** that



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

the images were almost certainly retrievable from the computer he utilized to access/retrieve the CSAM images. Reviewing the totality of circumstances, the affirmative steps taken by Gourde, paying for a website that sold CSAM, was clear and required a simple, common-sense application of law.

The facts of *USA v. McCullough* could not be more polar opposites. McCullough was NOT a paid member of ANY child pornography website. Nor did any law enforcement officer ever review any alleged photos/videos he possessed. There was no determination McCullough possessed CSAM, other than Det. Welsh's fabrication. McCullough did not subscribe to any online groups, or websites, and had ZERO criminal record prior to this case. Further there was no evidence McCullough had paid ANY person money-ever. No evidence was discovered on the MV1 photo, the MV3 video, or any alleged solicitations of AM/B.D. in this case. Thus, to apply the principles of *Gourde* to this case are inapposite.

The First Circuit addressed some of the issues in this case in *United States v. Brunette*, in which it wrote;

> "Although in Amirault we applied those factors in the context of reviewing a sentencing enhancement, the analysis here is the same: does a given image fall within the statutory definition of child pornography? Only if there is probable cause to believe so may a search warrant issue. A judge cannot ordinarily make this determination without either a factual description of the allegedly pornographic images, or at least an assessment based on a detailed affidavit of the relevant pictures by judicial officers at each stage of the process will consider whether the images are pornographic within the meaning of the statute."

Id., at *United States v. Brunette*, 256 F.3d 14 (1st Cir. 2001).

This case revolves around an alleged file, created and produced by MV3, in which he said 4 times no genitalia or sex was visible, which no law enforcement officer, prosecutor, US Attorney, Superior Court Judge, US Magistrate, or US District Judge has ever personally reviewed and determined to constitute child pornography under 18 USC 2256. The closest that this Court



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

has come is the mere "*inference*" that the file exists, and contains CSAM. Yet, inferences are not facts, as the *Lofstead* Court found:

> "Moreover, the need for factual evidence as opposed to solely relying on ***inferences*** of continued or serial criminal conduct is more pertinent in cases involving searches of and involving ESI. The greater vigilance demanded in Searches of ESI cautions against permitting inferences that aren't supported by clearer facts." (See CDT, 621 F.3d at 1177).

Id., at United States v. Lofstead, 574 F.Supp. 3d 831 (D. Nev. 2021. (Our emphasis).

The Blacks Law Dictionary defines "*Inference*" as - A conclusion reached by considering other facts and deducing a logical. Id.

Consequence from them. In this case - reliance on the unconfirmed report that the MV3/DJ video, contained depictions of minors engaged in sexually explicit conduct - DOES NOT provide a plausible inference that such video meets the 18 U.S.C. 2256 statutory definition of "child pornography", "sexually explicit conduct," or even a "graphic depiction." That presumption relies on inference stacking, more commonly known as the inference on inference rule, which states:

> "The principle that a presumption based on another assumption cannot serve as the basis for determining an ultimate fact."

Id., at Blacks Law Dictionary - Inference-on-Inference Rule.

**++CONCLUSION, TEMPORAL LIMITATION ARGUMENT:**

The Court must apply the legal standard announced in *Holcomb*, that when probable cause no longer existed for the crime which was being investigated, the warrant no longer justified the law enforcement's search of Computers. That the officers failure to realize that probable cause had dissipated was not "*objectively understandable and reasonable*." (see Maryland v. Garrison, 480 US 79, 85 (1987). The evidence and theories the Government will present are nothing short of speculation, which does not justify a continued search for evidence



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

outside the probable cause relevant investigative period. To date, the government has not adequately justified under what authority they were searching through unrelated personal photos, business documents, and family photos, and then introducing them as evidence in THIS case.

While the Government may point to file naming and digital labeling as reasoning to examine files to determine if they were "responsive," similar to the issues raised in _United States v. Adjani_ and _United States v. Hill_, here, in the instant case, as with the Holcomb date and timestamps are at issue, and the indiscriminate searching which was a result. Had Det. Welsh limited his search to the Relevant Investigative Period, and focused the Scope of the Warrant to digital data associated with the 5 State crimes. While the Government will attempt to argue the March 10, 2023 warrant was sufficiently particular, and not overbroad based on the language of the warrant. However, the issue lies within the execution of the warrant, and how Detectives used their own discretion to conduct such a broad search. Such that the time-unlimited search provisions rendered the 3.10.23 warrant an impermissible general warrant. Det. Reda, throughout his examination examines ALL files on EVERY device to determine whether the files are responsive to his search. This level of personal discretion is EXACTLY what is at issue.

An objectively reasonable officer, who was acting in good faith would KNOW that a complete search of a persons digital devices was not reasonable under the Fourth Amendment. When Det. Reda learned that NO evidence of the 5 State crimes alleged in the warrant were found, he should have reported this to Det. Welsh. This information decreased the likelihood McCullough had engaged in criminal activity. Ultimately, Det. Welsh arrested McCullough on Friday March 10, 2023, and held him in the Pierce County Jail for 72 hours on the 5 state charges. On Monday, March 13, 2023 - the Pierce County Prosecuting Attorneys Office filed a "*No Charges Filed*" notification, dismissing the charges, and releasing McCullough from jail. The fact that prosecutors identified they did not possess sufficient evidence to proceed with the case, underscores the lack of factual evidence investigators uncovered. In fact, the only evidence which



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

was found was discovered outside of the scope of probable cause and attributable to ANY of the allegations provided in the 3.10.23 affidavit.

The last piece of this is the "Plain-view Doctrine," which states:

> "The government may seize evidence without a valid warrant so long as government officials are lawfully searching the area where the evidence is found, and the incriminating nature of the evidence is immediately apparent."

Id., at <u>*United States v. Stafford*</u>, 416 F.3d 1068, 1076 (9th Cir. 2005).

> "The burden of demonstrating that both requirements are satisfied lies with the government."

Id., at <u>*United States v. Chester*</u>, 678 F.2d 1353, 1356 (9th Cir. 1982).

The Defense argues that the Government cannot meet its burden because neither Det. Reda, nor Det. Welsh were lawfully searching the area where the evidence was located. The Governments Evidence-in-chief was located while Detectives executed a general warrant, after probable cause for the offenses being investigated had dissipated. Plain-view cannot protect the exploratory rummaging over 20 years prior into McCullough's digital life.

> "When the plain-view seizure was in the context of officers executing an 'essentially general warrant,' the justification for the plain view... is absent."

Id., at <u>*United States v. Spilotro*</u>, 800 F.2d 959, 968 (9th Cir. 1986).

Thus, suppression of the 3.10.23 warrant is appropriate, because Det. Welsh sought, and obtained a general warrant that authorized him and Det. Reda to rummage through years worth of data, including music, documents, photos, any file they decided was relevant. The indiscriminate manner in which the Warrant was executed, in which no limits on the time-frame



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

pertinent to the investigation, or relevant time-frame or materials were followed. As the *Holcomb* Court concluded, the Fourth Amendment protects all, those suspected or known as to be offenders as well as the innocent.

Detective Reda's indiscriminate use of the Cellebrite UFED device to catalog and analyze over 50,000 images, videos, and personal files, most of which had nothing to do with the investigation conducted by Detective Welsh, or relevant in anyway to the diminished Probable cause. Only for his failure to categorize the data, and review the data using the "created date" or other time based measure to appropriately analyze the information and data was the Government's Evidence-in-chief located well outside the scope of probable cause. Serious questions remain as to why Det. Reda conducted such an expansive search, and under what authority he believed the forensic review of every single file on every single device was objectively reasonable, and why he failed to focus his search to the evidence of the specific Crimes under investigation, and why he failed to adequately document his search techniques, while claiming he took body camera footage of his examination - which to this date has not been presented in discovery in this case.

Therefore, the Defense moves to petition the court to schedule this motion for immediate oral arguments before the Court, and order the Government to respond. Further, based on the need for additional fact finding before the Court makes its ruling, the Defense requests an evidentiary hearing, whereupon Detectives Welsh and Reda of the Tacoma Police department may be called to provide additional information, search techniques, and answer specific questions about the scope of the 3.10.23 warrant.

The Court, being mindful of the recent decision in *United States v. Holcomb*, must consider the impact of the intervening precedent, and consider the application of law in the instant case, where AUSA Matthew Hampton is attempting to utilize the EXACT same tactics he used in Holcomb, against McCullough. The Court must DENY Mr. Hampton's attempt to subvert the Fourth Amendment, and Suppress the March 10, 2023 Search warrant of McCullough's residence,



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

and all digital devices due to the overbroad, in particular, temporally unlimited Search conducted by Tacoma Police Department Detectives.

**++II. RULE 414 AND RULE 403: THIS HONORABLE COURT SHOULD EXCLUDE ANY/ALL 414 EVIDENCE OF THE ALLEGATION OF MR. MCCULLOUGH SEXUALLY ASSAULTING CARTER STOCKBRIDGE, BASED ON A 403 PROPENSITY BASIS.**

Rule 414(a) permits relevant other child molestation evidence, including for propensity, in a qualifying prosecution. It does not compel admission. Rule 403 continues to govern. United States v. LeMay, 260 F.3d 1018, 1027–29 (9th Cir. 2001).[3] The Court considers similarity, temporal proximity, frequency, intervening circumstances, and need, together with the **risks of unfair prejudice, confusion**, and delay. Id. at 1027–28. (Our emphasis).

The alleged physical touching of a sleeping 12 year old and the charged production of a depiction involving MV1 differ in conduct and proof. The shared motocross access and sibling relationship have some relevance but do not establish the production elements.

The Government says it has strong circumstantial evidence linking McCullough to the videos. Gov't Mot. 8. MV2's disputed account would require substantial collateral litigation concerning timing, disclosure, interview methods, and the later telephone call. The incremental probative value should be weighed against the prospect of a second trial inside the trial currently at bar.

The LeMay Court upheld admission on its own facts, involving similar acts and a prior conviction, and requires careful Rule 403 balancing. Id., at 260 F.3d at 1028–29. The defense requests exclusion of any/all 414 evidence, as relates to Carter Stockbridge. Alternatively,

---

[3]. In Lemay, the Ninth Circuit held that FRE 414 is constitutional under the due process clause, BECAUSE of the protective balancing test of FRE 403, which insures that extreme prejudice is prevented.



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

at minimum, the defense requests production of the complete interview and call material, a specific proffer and Rule 104 hearing, an express Rule 403 ruling, limits on the testimony, and an appropriate instruction.

All due respect to the Court and the Government, the idea that a jury can hear a collateral SEX allegation, and remain unbiased/unprejudiced, is nothing short of laughable. I will remind the Court that, in sex cases, the danger of unfair prejudice is at its highest. As stated in the case of *State of Washington vs. Saltarelli*, 98 W.2d 358, at 364:

> These cases lack any analysis of the issue and do little more than pay lip service to the great potential for prejudice inherent in evidence of prior sexual offenses. They have been criticized as using motive and intent as "magic passwords whose mere incantation will open wide the courtroom doors to whatever evidence may be offered in their names United States v. Goodwin, 492 F.2d 1141, 1155 (5th Cir.1974). Slough and Knightly, in the article cited in the Comment to ER 404(b), criticized the readiness of courts of 30 years ago to admit evidence of prior crimes, wrongs, or acts in sex cases.
>
> When deciding the issue of guilt or innocence in sex cases, where prejudice has reached its loftiest peak, our courts have been most liberal in announcing and fostering a nebulous exception, offering scant attention to inherent possibilities of prejudice. Just when protection is most needed, the rules collapse.
>
> 41 Iowa L.Rev., at 334. We consider this criticism as valid now as when it was written, and refuse to allow evidence of *365 prior crimes, wrongs or acts to be admitted without a careful consideration of relevance and a realistic balancing of its probativeness against its potential for prejudice.

Id.

The defense suggests that introduction of collateral sexual misconduct will amount to a directed verdict. Moreover, the only way the defense has to confront such an allegation, is to have a trial within a trial.

**II. RULE 404(b) AS AN ALTERNATIVE THEORY AND ANALOGOUS LIMIT**



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

Evidence Rule 404(b)(1) ordinarily bars use of other acts solely to show character and conduct in conformity. ER 404(b) is designed to prohibit "propensity" evidence. Evidence Rule 404(b)(2) permits a genuinely relevant non-propensity purpose subject to Rule 403. Rule 414 creates a limited exception that allows propensity in qualifying cases. Thus Rule 404(b) cannot by itself bar evidence that independently satisfies Rule 414; the defense's objection to the MV2 allegation rests principally on Rule 403 and LeMay. If the Government offers an additional act outside Rule 414 or alternatively invokes intent, absence of mistake, or another Rule 404(b) purpose, it must identify the precise fact of consequence and explain the inference without relying on propensity. Fed. R. Evid. 404(b); *United States v. Curtin*, 489 F.3d 935, 944–45, 957–58 (9th Cir. 2007) (en banc).[4]

The Court should require an item specific proffer and analyze each stated theory. Labeling a disputed collateral event "intent" does not eliminate the danger of a propensity inference or the expense of litigating the separate accusation. Under either rule, Rule 403 requires weighing the actual trial need and available alternatives against unfair prejudice, confusion, and delay. The defense seeks no categorical holding that all propensity proof is forbidden under Rule 414.

**III. ADDITIONAL MOTIONS IN LIMINE**

With respect to the Government's motions in limine, the defense does not intend to comment on the potential sentence to be received by Mr. McCullough. The only reference the defense will make to Det. Jimmy Welch, would be to the substance of his reports, and his value as a witness who can confirm a FRE 801 or 613 inconsistency. That

---

[4]. USA vs. Curtin was a case that dealt with the admissibility of a defendant's private reading materials and fantasies under FRE 404(b) and 403.



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662

said, it very much goes to the credibility of Det. Welsh, should he violate his oath, that a federal judge has entered a finding that his credibility was called into question.

**IV. REQUESTED DISPOSITION**

Exclude the MV2 allegation; alternatively conduct a Rule 104 hearing and express Rule 403 analysis. Grant the additional trial management rulings above, or require counsel to approach before raising a disputed subject.

DATED this 28th day of SEPTEMBER, 2026.

BRYAN G. HERSHMAN LAW OFFICE

By:____________________________
BRYAN G. HERSHMAN, WSB 14380
Attorney for Defendant

Word Count 9,382 words.



**BRYAN G. HERSHMAN**
ATTORNEY AT LAW
1105 Tacoma Avenue South
Tacoma, Washington 98402
Tacoma: (253) 383-5346
Facsimile: (253) 572-6662